UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of                                                          101 West Lombard Street
Douglas R. Miller                                                   Baltimore, Maryland 21201
United States Magistrate Judge                         MDD_DRMChambers@mdd.uscourts.gov
                                                                           (410) 962-7770


March 29, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:   *Kanan C. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
        Civil No. 25-0472-DRM

Dear Counsel:

On February 13, 2025, Plaintiff Kanan C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 13, 19 and 20). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on June 23, 2021, alleging a disability onset of November 1, 2019. Tr. 10. Plaintiff's claims were denied initially and on reconsideration. Tr. 136-140; 148-151. On July 12, 2023, an Administrative Law Judge ("ALJ") held a hearing. Tr. 36-95. Following the hearing, on October 25, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 24. The Appeals Council denied Plaintiff's request for review, Tr. 1-5, so the ALJ's

---

[1] Plaintiff filed this case against Michelle King, the Acting Commissioner of Social Security on February 13, 2025. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq. (the "Act").

*Kanan C. v. Bisignano*
Civil No. 25-0472-DRM
March 29, 2026
Page 2

decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.  THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since November 1, 2019, the alleged onset date." Tr. 11. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "neurocognitive disorder/specific learning disability, anxiety, depression, and attention-deficit hyperactive disorder." Tr. 11. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 13. The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: Avoid work at unprotected heights. Able to understand and carry out simple instructions, and routine, repetitive tasks. Able to apply common sense understanding to carry out detailed, but uninvolved, instructions. Avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others). Able to perform work activities for up to 2 hours at a time, but would then become distracted, causing the individual to be off task. However, time off task can be accommodated with normal breaks. Occasionally able to change work activities or work settings during the workday without being disruptive. Occasionally able to deal with changes in a routine work setting. Able to have occasional interaction with supervisors, co-workers, and/or the general public.

Tr. 16. The ALJ determined that Plaintiff was unable to perform past relevant work as a banquet setup / clean up worker and server, but he could perform other jobs that existed in significant numbers in the national economy such as dishwasher, material handler, grader/sorter, price marker, cleaner, and textile worker. Tr. 23. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 24.

*Kanan C. v. Bisignano*
Civil No. 25-0472-DRM
March 29, 2026
Page 3

### III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.    ANALYSIS

On appeal, Plaintiff argues that the ALJ's failure to summarize or evaluate critical neuropsychological findings in an October 2022 evaluation (Exhibit 5F) renders the RFC legally deficient, that the ALJ failed to apply the required factors under 20 C.F.R. § 404.1520c in evaluating the opinion evidence in Exhibit 5F, and that these two errors were material because the vocational expert testified that even marginal productivity loss would preclude competitive employment. ECF No. 13 at 8, 11 and 14. Defendant counters that the ALJ reasonably found that Plaintiff was not disabled under the stringent requirements of the Act and regulations, and substantial evidence supports the ALJ's evaluation of the opinion evidence. ECF No. 19 at 6-7. Plaintiff replies that Defendant's defense of the RFC ignores the ALJ's failure to mention important and material evidence and its defense of the ALJ's opinion evidence analysis misstates the requirements of 20 C.F.R. § 404.1520(c). ECF No. 20 at 2-3.

When evaluating medical opinions in claims filed on or after March 27, 2017[3], an ALJ must, as the Fourth Circuit recently explained:

> "evaluate the persuasiveness" of that evidence by applying a five-factor test, 20 C.F.R. § 404.1520c(a); *see also id.* § 404.1520c(b)(2), (c). The factors are: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c)(1)-(5).
>
> Although the Social Security Administration must ultimately "stat[e] the ... reason or reasons upon which" its final decision "is based," 42 U.S.C. § 405(b)(1), an ALJ need not explain in detail how he "evaluate[d] the persuasiveness," 20 C.F.R. § 404.1520c(a), of each piece of evidence in the record. The ALJ only needs to say,

---

[3] *See Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

*Kanan C. v. Bisignano*
Civil No. 25-0472-DRM
March 29, 2026
Page 4

for each "medical source" in the record, how each of the first two factors applies—that is, whether that source's conclusions are supportable by medical evidence and consistent with the rest of the record. *Id.* § 404.1520c(b)(1), -(2). An ALJ must consider all five factors, but need not discuss any save the first two unless those other factors are dispositive. *Id.* § 404.1520c(b)(3); *see* 42 U.S.C. § 405(b)(1).

*Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604-05 (4th Cir. 2025).

The relevant regulations define these first two factors as follows:

(1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1), -(2).

"Supportability is the degree to which a provider supports [his or her] opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)–(2)).

This Court has noted that supportability must be considered independently from consistency. *See Duane H. v. Kijakazi*, Civ. No. JMC-20-3673, 2021 WL 8314949, at *3 (D. Md. Dec. 29, 2021) (recognizing that to consider supportability "in conjunction with" consistency "would conflate the nuances of those factors."). The consistency factor is an outward facing inquiry, looking at whether the medical opinion is consistent with other evidence in the record. *Rosa M. v. Kijakazi*, No. 9:22-CV-04494-BHH-MHC, 2023 WL 9101308, at *7 (D. S. C. Dec. 8, 2023). Evaluating supportability, on the other hand, requires the ALJ to assess the relevance of "the objective medical evidence and supporting explanations presented by a medical source" to the ultimate finding advanced by that medical expert. 20 C.F.R. § 404.1520c(c)(1).

Here, the ALJ's analysis of the providers' opinions in the October 2022 evaluation (Exhibit 5F) consisted of the following paragraph:

The undersigned finds the October 2022 neuropsychological evaluation provided by I. Levy-Paris, Ph.D. and S. Douglas, M.S., stating that the claimant's mood, anxiety, learning, and neurocognitive deficits have impacted the claimant's current

*Kanan C. v. Bisignano*
Civil No. 25-0472-DRM
March 29, 2026
Page 5

level of functioning, and that the claimant would be most successful in a job with a consistent schedule with clearly outlined responsibilities with limited demands for reading, writing, and math skills, of limited persuasive value (Exhibit 5F). *The limitations cited above are generally inconsistent with and unsupported by the medical evidence and other evidence of record. For instance, WAIS-IV testing revealed that the claimant's overall intellectual functioning was in the average range (Exhibit 5F/7).* In addition, treatment records noted that he was able to graduate high school, he did not have to repeat any grades, and that he did not receive any special education services (Exhibit 2F/1). Furthermore, mental status testing consistently demonstrated that the claimant's memory was intact, his behavior was appropriate, and that his judgment was intact (Exhibit 1F/7, 8; Exhibit 3F/12, 16, 22, and 37). Furthermore, during a May 2022 neuropsychological evaluation, the examiner noted that the claimant's constellation of mild deficits is not indicative of a particular neurocognitive disorder (Exhibit 2F/5). Thereafter, the claimant testified that he could drive short distances, and that he worked at a Banquet job for almost 2 years (Hearing Testimony). Based on the findings above, this evaluation is of limited persuasive value.

Tr. 21-22 (emphasis added).

The ALJ did not adequately articulate an evaluation under the supportability factor of 20 C.F.R. § 404.1520c(c)(1). The two italicized sentences are the only two that even arguably go to addressing supportability rather than consistency. The remaining sentences reference evidence from other medical sources and thus address only the consistency factor in 20 C.F.R. § 404.1520c(c)(2).

The supportability analysis references a single test result placing Plaintiff's overall intellectual functioning in the average range, without explaining how that result undermined the evaluators' opinion that "the claimant's mood, anxiety, learning, and neurocognitive deficits" meant he "would be most successful in a job with a consistent schedule with clearly outlined responsibilities with limited demands for reading, writing, and math skills." This evaluation is missing the analysis required by 20 C.F.R. § 404.1520c(c)(1). "Supportability requires the adjudicator to evaluate the objective medical evidence and supporting explanations presented by the medical source to justify the opinion." *Joyce C. v. Bisignano*, No. DRM-25-0076, 2026 WL 458564, at *5 (D. Md. Feb. 18, 2026) (finding ALJ failed to adequately evaluate the supportability factor when the ALJ did not analyze whether the provider's clinical observations were supported nor explain why the underlying clinical basis for her opinion was deficient or unsupported).

To the extent the ALJ implied there was an irreconcilable contradiction between the WAIS-IV results and the evaluators' opinion about Plaintiff's vocational abilities, such a contradiction is not obvious. The evaluators did not base their opinion solely on Plaintiff's overall intellectual

*Kanan C. v. Bisignano*
Civil No. 25-0472-DRM
March 29, 2026
Page 6

functioning. The October 2022 evaluation involved a dozen tests[4]; a review of available medical records; developing a detailed history including medical/developmental, educational, occupational, mental health, psychosocial, and family components; and a clinical interview (including behavioral observations) with the Plaintiff and his stepmother. Tr. 435-439, 450. The evaluators prefaced their recommendations by stating that Plaintiff "is a young man *of generally average intelligence* whose mood, anxiety, learning and neurocognitive differences have significantly impacted his current level of functioning," and offered their recommendations "in light of [this] diagnostic profile." Tr. 452 (emphasis added.) In other words, their opinion appears to have explicitly taken into account the very finding that the ALJ (implicitly) pointed to as undermining it. Given that context, in order for the ALJ to reject the providers' opinion based solely on the WAIS-IV result, there was a particular need for him to provide the explanation required by 20 C.F.R. § 404.1520c(b)(2).

Yet the ALJ failed to discuss how the objective medical evidence, diagnostic techniques, or data collection procedures underlying the providers' opinions in Exhibit 5F led him to the conclusion that the opinion was unpersuasive. *See Theresa S. v. Bisignano*, No. DRM-25-0094, 2025 WL 3628620, at *3 (D. Md. Dec. 15, 2025) (finding the ALJ failed to adequately evaluate the supportability factor where the ALJ's only analysis was a reference to the provider's comment on the effect of the subject's disposition on a score, but the ALJ did not suggest the provider failed to incorporate that consideration into the opinion). "[T]his cursory analysis does not build a logical bridge between the evidence and the ALJ's conclusions and frustrates meaningful judicial review, requiring remand." *Heather G .v. Bisignano*, No. DRM-24-3399, 2026 WL 381625, at *4 (D. Md. Feb. 11, 2026) (finding that ALJ failed to adequately evaluate the supportability and consistency factors when the ALJ briefly summarized many pages of medical evidence without specifying how the evidence was unsupportive or inconsistent with the provider's opinion); *cf. Shane B. v. Bisignano*, No. DRM-24-3607, 2026 WL 369392, at *4 (D. Md. Feb. 10, 2026) (finding that ALJ adequately addressed supportability when the ALJ referenced results of the provider's clinical examination and her conclusions which the ALJ found supported the provider's proposed limitations); *see also Michael C. v. Kijakazi*, No. BAH-22-0029, 2022 WL 13945281, at *3 (D. Md. Oct. 24, 2022) (finding that ALJ adequately assessed supportability when ALJ noted provider's observations and results of examinations).

The ALJ's failure to determine whether the providers supported their opinions with relevant, objective medical evidence and explanation may have been consequential. Had the ALJ

---

[4] "PROCEDURES: Wechsler Adult Intelligence Scale Fourth Edition (WAIS-IV); Woodcock Johnson IV Test of Achievement (WJ-IV Form A); Lateral Dominance Examination (LDE); Grooved Pegboard (GPB); Rey Complex Figure Test (RCFT); Wide Range Assessment of Memory and Learning Third Edition (WRAML-3, selected subtests); Delis-Kaplan Executive Functioning System (D-KEFS, selected subtests); Beck Depression Inventory II (BDI-II); Beck Anxiety Inventory-II (BAI-II); Test of Memory Malingering (TOMM); Comprehensive Executive Function Inventory (CEFI); Behavior Rating Inventory of Executive Functions - Adult Version (BRIEF-A); Adaptive Behavior Assessment System, Third Edition (ABAS-3); Achenbach Child Behavior Checklist (CBCL: parent and teacher forms)." Tr. 435.

*Kanan C. v. Bisignano*
Civil No. 25-0472-DRM
March 29, 2026
Page 7

appropriately considered the supportability of the providers' opinions in Exhibit 5F, the ALJ might have come to a different determination of the weight those opinions should be given. This revised weight could, in turn, have altered Plaintiff's RFC, and potentially impacted the determination of whether Plaintiff is disabled.

In particular, the vocational expert ("VE") testified that an individual with Plaintiff's same age, education, and work experience who was off task more that 9% of the workday (in addition to normal breaks) or who was absent unexpectedly more than one day per month, 12 days per year, "would not be able to sustain any full-time, competitive employment." Tr. 82. In Exhibit 5F, the providers opined that Plaintiff has difficulties with executive function, Tr. 450, and "sticking with tasks," Tr. 450, and should "take frequent breaks during the day. . . ." Tr. 453. In the RFC, the ALJ stated Plaintiff would be "[a]ble to perform work activities for up to 2 hours at a time, but would then become distracted, causing the individual to be off task. However, time off task can be accommodated with normal breaks." Tr. 16. Had the ALJ given more weight to the opinion in Exhibit 5F and included the limitations identified in Exhibit 5F in the RFC, the ALJ might have found Plaintiff disabled based on the VE's testimony. *See Dana C. v. Bisignano*, No. DRM-24-3353, 2025 WL 3703651, at *4 (D. Md. Dec. 22, 2025).

Defendant argues that the ALJ is not required to specifically refer to every piece of evidence and "an ALJ's failure to cite a specific piece of evidence is not an indication that the evidence was not considered." ECF No. 19 at 9 (citing *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)). Defendant also details the evidence in Exhibit 5F and throughout other parts of the record and concludes that substantial evidence supports the ALJ's decision, even if some medical evidence conflicts. ECF No. 19 at 10-13. The Court cannot take note of other evidence in the record which was not discussed by the ALJ in the supportability analysis of Exhibit 5F and then find that it may support the ALJ's determination of the persuasiveness of that item. *See Connie C. v. Bisignano*, No. DRM-24-3613, 2026 WL 178777, at *4 (D. Md. Jan. 22, 2026) ("The regulation required the ALJ to conduct *and explain* a consistency analysis . . . . That did not occur, and '[o]ur circuit precedent makes clear that it is not the Court's role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record'") (quoting *Fox v. Colvin*, No. 14-2237, 2015 WL 9204287, at *4 (4th Cir. Dec. 17, 2015)). The ALJ was required to conduct *and explain* the supportability analysis of Exhibit 5F. 20 C.F.R. § 404.1520c(c)(1).

For these reasons, the Court cannot meaningfully review the ALJ's supportability analysis, and remand is necessary so that the ALJ can provide an analysis of the opinion in the October 2022 evaluation (Exhibit 5F) that fully comports with 20 C.F.R. § 404.1520c. The Court takes no position on what level of persuasiveness, if any, should attach to that opinion.

Because the case is being remanded on other grounds, the Court need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

*Kanan C. v. Bisignano*
Civil No. 25-0472-DRM
March 29, 2026
Page 8


### V.    <u>**CONCLUSION**</u>

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.


Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge